Jason D. Smith
Nevada Bar No. #9691
**Spencer Fane**
300 South Fourth Street, Suite 1600
Las Vegas, NV 89101
Phone: 702-408-3400 / Fax: 702-938-8648
jdsmith@spencerfane.com

Allen Justin Poplin (will comply with LR IA 11-2 within 14 days)
**AVEK IP, LLC**
7285 W. 132nd Street, Suite 340
Overland Park, KS 66213
Phone: 913-303-3841
jpoplin@avekip.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Shenzhen Jiayi Electronic Technology Co., Ltd., | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Class and Culture LLC, | |
| Defendant. | |

Case No.

COMPLAINT

COMES NOW Plaintiff Shenzhen Jiayi Electronic Technology Co., Ltd. ("Jiayi" or "Plaintiff"), by and through undersigned counsel, to submit the following for its Verified Complaint against Class and Culture LLC ("Defendant"):

## NATURE OF THE ACTION

1. This is a civil action arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the Patent Laws of the United States, 35 U.S.C. § 1 et seq. for declaratory judgment of non-infringement and invalidity of U.S. Patent Number 10,812,886 ("the '886 Patent") (attached as Exhibit A).

2. Plaintiff brings the declaratory judgment action in view of the actual controversy that Defendant has created by asserting the '886 Patent against Plaintiff by filing complaints alleging patent infringement with Amazon.com, initiating Amazon Patent Evaluation Express (APEX) proceedings against Plaintiff, and affecting Plaintiff's ability to sell its products to consumers in this district.

## THE PARTIES

3. Plaintiff is a Chinese limited liability company with a principal place of business at Tongle Community, Nantou Street, Nanshan District, Anju Tongle Xinyuan, Apartment 1908, Shenzhen City, Guangdong, China.

4. On information and belief, Defendant Class and Culture LLC is a Nevada Limited Liability Company with a principal place of business at 1516 East Tropicana Avenue Suite 295-2, Las Vegas, Nevada 89119.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over the patent claims in this action under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, Title 35 U.S.C. § 1 et seq.

6. Upon information and belief, Defendant is a resident of this District. As such, venue is proper under 28 U.S.C. § 1391(b)(1).

Case No.

7. This Court may properly exercise personal jurisdiction over Defendant at least because Defendant is physically present and maintains a principal place of business within this District.

## STATEMENT OF FACTS

### *The Patent-in-Suit*

8. U.S. Patent Application No. 15/078,796 ("the '796 Application"), entitled "Earpiece," was filed on March 23, 2016.

9. The '796 Application matured into U.S. Patent No. 10,812,886 ("the '886 Patent") when it issued on October 10, 2020. Attached hereto as Exhibit A is a true and correct copy of the '886 Patent.

10. The '886 Patent is the latest in a long lineage of patents and applications that began with Norwegian Patent Application No. 20072812 ("the Norwegian '812 Application"), which was filed on June 1, 2007. Ex. A at 5.

11. The '886 Patent claims the benefit of the Norwegian '812 Application's priority date of June 1, 2007. Ex. A at 1.

12. As recorded with the U.S. Patent and Trademark Office at reel/frame 72333/0878, the '886 Patent was assigned to Defendant on September 15, 2025. Attached hereto as Exhibit D is a true and correct copy of the assignment as filed with the USPTO on September 22, 2025.

13. The '886 Patent comprises three independent claims, Claims 1, 3, and 4. Ex. A at 6.

14. Claim 1 of the '886 Patent provides as follows:

> 1. A positioning and retaining structure for an earphone, the positioning and retaining structure comprising
>
>> an outer edge and an inner edge, each extending from a base to be coupled to the earphone and meeting at a tip distant from the base,
>>
>> wherein the base comprises a cushion structure shaped to substantially fill the concha of a user when the earphone is worn in user's ear,

the outer edge having different radii of curvature along its length, including a first section at the base having a first radius of curvature and a second section near the tip having a second radius of curvature greater than the first radius of curvature, such that the outer edge is more sharply curved near the base and less-sharply curved near the tip.

15. Claim 3 of the '886 Patent provides as follows:

3. A stability and comfort attachment structure for an earphone, comprising

an outer edge and an inner edge, each extending from a base to be coupled to the earphone and meeting at a tip distant from the base,

wherein a part of the base is shaped to substantially fill the concha of a user when the earphone is worn in the user's ear,

the outer edge having differing radii of curvature along its length, including a first section at the base having a first radius of curvature and a second section near the tip having a second radius of curvature greater than the first radius of curvature, such that the outer edge is more sharply curved near the base and less-sharply curved near the tip.

16. Claim 4 of the '886 Patent provides as follows:

4. A ear unit stable for comfortable attachment of an ear phone, comprising:

a first surface and a second surface, each extending from a base to be coupled to the earphone and meeting at an end distant from the base,

wherein a part of the base is shaped to substantially fill in the concha of a user when the earphone is worn in user's ear,

the first surface having differing radii of curvature along its length thereby forming a decremental curve, wherein the first surface is more-sharply curved near the base and less-sharply curved near the end distant from the base.

17. As such, each independent claim of the '886 Patent requires a "base" that "substantially" fills in the concha of a user's ear.

### ***Prosecution History of the '886 Patent***

18. As stated above, the '796 Application was filed on March 23, 2016.

19. On November 16, 2016, the examiner evaluating the '796 Application issued a non-final Office Action rejecting all five claims of the '796 Application on various grounds including,

Case No.

*inter alia*, a rejection of all claims for failure to satisfy the written description requirement of 35 U.S.C. § 112. *See* Exhibit B at 267-294.

20. In so rejecting, the Examiner found that the written description failed to support the claims of the '796 Application, specifically finding in relevant part that "[t]he original specification does not disclose the positioning and retaining structure comprising a base to be coupled to the earphone, wherein the base comprises a cushion structure shaped to substantially fill the concha as claimed in claim 1." *Id.* at 270.

21. Defendant's predecessor in interest appealed the examiner's refusal to the Patent Trial and Appeal Board on January 26, 2017, wherein it argued that the disputed element was in fact supported by the specification of the '796 Application and/or the predecessor applications incorporated by reference therein. *Id.* at 203-209.

22. Defendant's predecessor in interest argued that "although the specification [did] not use the phrase 'substantially fill the concha,' the figures and description do, however, provide sufficient disclosure that one of ordinary skill in the art would have understood the applicant to be in possession of such a feature." *Id.* at 205-206.

23. Specifically, Defendant's predecessor in interest alleged written support for the element of a "base substantially filling the concha" as follows:

> Specifically, for example, Figure 5 shows an embodiment of the earpiece contemplated by the invention. As described in paragraph 0021, the curvature of this embodiment fits 'closely against the ear mussel' (i.e., concha). Referencing Figure 1 (a diagram of the human ear), paragraph 0022 further explains that "the outer periphery of the ear unit is held in the ear by the outer parts of the ear such [as] the lower part of the antihelix 13, antitragus 3 and tragus 4 of the ear…." This paragraph goes on to note that "[p]arts of the curve [are] positioned inside the antihelix 13 when viewed from the outside of the ear where said parts therefore are not visible." Paragraph 0023 continues, indicating that the ear unit also makes contact with "the cavity covered by the lower node 15 of the antihelix and the flap 2 covering said cavity." Finally, paragraph 0027 explains that the surface 25, which faces the skull, is curved "in such a way that it follows along the inner surface of the ear mussel or concha 22." Human outer ear anatomy shows that the antihelix 13, antitragus 3, tragus 4, lower node 15, and flap 2 line along the concha at its periphery." *See* Fig. 1; *see also*, Sec. VI, Ex. A, Dr. Smith Declaration, Fig. 3. From the above descriptions, therefore, it is clear to a person of ordinary skill in the art

that the earpiece in this embodiment contacts all of these surfaces and follows the inner contour of the ear mussel (*i.e.*, concha), thereby substantially filling the concha.

*Id.*

24. In other words, in order to overcome the rejection of all claims and secure issuance of the '886 Patent, Defendant's predecessor in interest represented to the Patent Trial and Appeal Board that "substantially filling the concha" is defined by the '886 Patent's specification as being in contact with parts of the ear surrounding the periphery of the concha, including the antihelix, antitragus, tragus, lower node, and flap.

### *Plaintiff's Accused Products*

25. Plaintiff manufactures and sells, among other products, silicon covers ("Plaintiff's Products") for wireless headphone devices such as Apple AirPods through Plaintiff's online storefront on Amazon.com under the trade name Gcioii.

26. Plaintiff sells its products in various configurations, colors, and quantities, including different versions designed to fit the unique curvatures of different generations of Apple AirPods. Plaintiff's Products are available on Amazon.com under at least the Amazon Standard Identification Numbers (ASINs) B0BDMRVHXB, B0FVY1Z7Q4, and B0FWVCLRX4V. Exemplary images drawn from the listing associated with ASIN B0BDMRVHXB are reproduced below:




Case No.

COMPLAINT
-5-

27. On January 20, 2026, Defendant initiated APEX proceedings against Plaintiff's Products accusing them of infringing Claim 3 of the '886 Patent. As a result, Amazon notified Plaintiff that if it chose not to engage in APEX proceedings within the subsequent three weeks, Amazon intended to deactivate its listings. Attached hereto as Exhibit C is a true and correct copy of the APEX Agreement executed by Defendant and delivered to Plaintiff.

28. Defendant's actions have tarnished Plaintiff's reputation, caused Plaintiff to lose profit, and have placed a high volume of Plaintiff's Products at risk of imminent delisting by Amazon, which would cause further reputational harm, threaten Plaintiff's hard-earned and lawfully gained position in the marketplace, and cause irreparable harm through the loss of business opportunities.

### *Plaintiff's Products do not infringe*

29. Plaintiff's Products do not infringe any claim of the '886 Patent because they plainly lack at least one element of each independent claim therein.

30. Specifically, by way of example and without limitation, Plaintiff's Products clearly lack a "base" that "substantially fills the concha" as required by each independent claim of the '886 Patent.

31. The exemplary images below, which are also drawn from the Amazon listing relating to ASIN B0BDMRVHXB, show the positioning of Plaintiff's Products in relation to the user's ear:[1]

---

[1] For the convenience of the Court, a diagram of human outer ear anatomy is attached hereto as Exhibit E.

Case No.

 

32. As shown above, no part of the "base" of Plaintiff's Products, as recited by the '886 Patent, "substantially fills the concha" of the user's ear as that phrase was defined by Defendant's predecessor in interest before the Patent Trial and Appeal Board.

33. Specifically, and without limitation, Claim 1 of the '886 Patent requires "an outer edge and an inner edge, each extending from a base to be coupled to the earphone and meeting at a tip distant from the base[.]" Claim 1 further requires a "base" that "comprises a cushion structure shaped to substantially fill the concha of a user when the earphone is worn in user's ear[.]"

34. As shown above, the only portion of Plaintiff's Product that is a "base" does not "substantially fill the concha" of the user's ear as that phrase was defined during prosecution of the '886 Patent. Rather, the "base" contacts only the tragus and antitragus of the user's ear. As such, Plaintiff's Products lack this element and therefore do not infringe Claim 1 or any claim depending therefrom (i.e., Claim 2).

35. Claim 3 of the '886 Patent similarly requires "an outer edge and an inner edge, each extending from a base to be coupled to the earphone and meeting at a tip distant from the base[.]" Claim 3 further requires that "a part of the base is shaped to substantially fill the concha of a user

when the earphone is worn in user's ear[.]" For the same reason set forth above in relation to Claim 1, Plaintiff's Products clearly lack the element of a "base" that "substantially fills the concha" of a user when the headphone is worn, contacting only the tragus and antitragus of the user's ear. As such, Plaintiff's Products do not infringe Claim 3.

36. Claim 4 of the '886 Patent requires "a first surface and a second surface, each extending from a base to be coupled to the earphone and meeting at an end distant from the base[.]" Claim 4, like Claims 1 and 3, also requires that "a part of the base is shaped to substantially fill in the concha of a user when the earphone is worn in user's ear[.]" Plaintiff's Products again do not meet this element. As such, Plaintiff's Products do not infringe Claim 4 or any claim depending therefrom (i.e., Claim 5).

### *The '886 Patent is Unenforceable*

37. As stated above, the '886 Patent is the latest entry in a long lineage of patents and patent applications dating back to the Norwegian '812 Application. *See* ¶¶ 10-11, *supra*.

38. Also among this lineage were U.S. Patents No. 8,630,436 ("the '436 Patent") and 8,976,995 ("the '995 Patent").

39. In early 2020, the Court of Appeals for the Federal Circuit affirmed the PTAB's decisions in IPRs 2017-00129 and 2017-00130, respectively, which held that all claims of the '436 and '995 Patents were unpatentable. Ex. B at 41.

40. During the appeal before the PTAB prosecuted by Defendant's predecessor in interest and discussed at ¶¶ 21-24, *supra*, the PTAB ultimately overruled all but one of the Examiner's rejections of the '796 Application. The sole remaining rejection, which was sustained by the PTAB, was for obviousness-type double patenting over the claims of the '436 and '995 Patents. *Id.* at 37.

41. In order to overcome this rejection, Defendant's predecessor in interest executed a terminal disclaimer on April 23, 2020, whereby it disclaimed any period of validity for the '886 Patent beyond the expiration date of the '436 and '995 Patents. *Id.*

Case No.

COMPLAINT
-8-

42. As part of this disclaimer, and as is mandatory for terminal disclaimers, Defendant's predecessor in interest agreed that "any patent granted on [the '796 Application] shall be enforceable only for and during such period that it and Patent Nos. 8,630,436 and 8,976,995 are commonly owned." *Id.* at 39. *See also* 37 C.F.R. § 1.321(c) ("A terminal disclaimer, when filed to obviate judicially created double patenting in a patent application [] must [] [i]nclude a provision that any patent granted on that application [] shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting.").

43. As stated above, the '886 Patent was assigned to Defendant on September 15, 2025. *See* ¶ 12, *supra*; Ex. D.

44. No assignment to Defendant for either of the '436 or '995 Patents has been recorded with the USPTO.

45. On information and belief, the '886 Patent, '436 Patent, and '995 Patents are not commonly owned.

46. As such, per the aforementioned terminal disclaimer, the '886 Patent is unenforceable.

### *Unclean Hands*

47. On October 11, 2024, the '886 Patent expired for failure to pay the required 3.5-year maintenance fees.

48. Three months later, on January 13, 2025, a representative for Defendant's predecessor in interested petitioned the U.S. Patent and Trademark Office for reinstatement of the '886 Patent, indicating that the lapse in maintenance fees was "unintentional." Ex. B. at 6.

49. Just eight months later, on September 15, 2025, the original owners of the '886 Patent assigned the '886 Patent to Defendant. *See* Ex. D at 2.

50. On information and belief, the original owners of the '886 Patent's failure to pay the 3.5-year maintenance fee was intentional, and the '886 Patent was purposefully allowed to lapse.

51. Accordingly, on information and belief, the owners of the '886 Patent's representation to the USPTO that their failure to pay the fee was unintentional was false.

52. On information and belief, Defendant's predecessor in interest to the '886 Patent sought to revive the patent solely for purposes of marketing and selling the patent.

53. Under 37 C.F.R. § 1.56, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [USPTO], which includes a duty to disclose to the [USPTO] all information known to that individual to be material to patentability."

54. Defendant's predecessor in interest to the '886 Patent revived the '886 Patent through misrepresentation and inequitable conduct before the USPTO. As individuals owing a duty of candor to the USPTO, they knew that their statement—that the lapse in payment of maintenance fees for the '886 Patent was unintentional—was false, and that the non-payment was, in fact, intentional. Statements to the contrary, including those in the petition to accept the unintentionally delayed payment of the maintenance fee, were made with the intent to deceive the USPTO.

55. The USPTO relied on Defendant's predecessor in interest's false statements in reinstating the '886 Patent and accepting late payment of the maintenance fees.

56. Accordingly, the '886 Patent is only active today due to inequitable conduct before the USPTO, which led to its improper revival.

## COUNT I

**Declaratory Judgment of Non-Infringement**

*28 U.S.C. §§ 2201* **et seq.***; 35 U.S.C. § 271*

57. The allegations of each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

58. In light of Defendant's actions in facilitating APEX proceedings and the imminent takedown of Plaintiff's Products through assertion of the '886 Patent, an actual case or controversy exists between the parties as to whether Plaintiff has infringed the '886 Patent.

Case No.

59. For the reasons set forth above, Plaintiff's Products clearly lack at least one element of each independent claim of the '886 Patent. As such, Plaintiff's Products do not infringe any claim of the '886 Patent.

60. Accordingly, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiff respectfully requests a declaration by the Court that the Plaintiff's Products do not infringe the '886 Patent.

## COUNT II

### Declaratory Judgment of Unenforceability – Terminal Disclaimer

*28 U.S.C. §§ 2201 et seq.; 37 C.F.R. § 1.321(c)*

61. The allegations of each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

62. As set forth above, Defendant's predecessor in interest executed a terminal disclaimer during prosecution of the '796 Application in order to overcome an obviousness-type double patenting rejection of all claims therein in view of the '436 and '995 Patents.

63. As stated within the terminal disclaimer and required by 37 C.F.R. § 1.321(c), Defendant's predecessor in interest agreed that any patent issuing from the '796 Application (i.e., the '886 Patent) would be enforceable only so long as it and the '436 and '995 Patents were commonly owned.

64. On information and belief, Defendant does not own the '436 and '995 Patents.

65. Because the '886, '436, and '995 Patents are not commonly owned, the '886 Patent is unenforceable.

## COUNT III

### Declaratory Judgment of Unenforceability – Unclean Hands

*28 U.S.C. §§ 2201 et seq.; 35 U.S.C. § 282*

66. The allegations of each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

67. As set forth above, the '886 Patent previously expired for failure to pay the required maintenance fees.

68. Through misrepresentations in a petition to the USPTO wherein Defendant's predecessor in interest claimed that its failure to pay the required fees was unintentional, when in fact the '886 Patent was purposefully allowed to lapse, the '886 Patent was revived.

69. Because the '886 Patent is active today only by virtue of inequitable conduct, the '886 Patent is unenforceable.

70. Accordingly, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiff respectfully requests a declaration by the Court that the '886 Patent is unenforceable due to inequitable conduct before the USPTO.

## COUNT IV

### Declaratory Judgment of Invalidity

*28 U.S.C. §§ 2201* et seq.*; 35 U.S.C. §§ 101* et seq.*

71. The allegations of each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

72. The '886 Patent fails to meet the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, and/or 112, at least for the reasons that the '436 and '995 Patents are invalid.

73. Accordingly, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiff respectfully requests a declaration by the Court that the '886 Patent is invalid for failure to meet the requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to grant the following relief:

a. A declaration that the '886 Patent is not infringed;

b. A declaration that the '886 Patent is unenforceable due to inequitable conduct before the U.S. Patent and Trademark Office;

Case No.

c. A declaration that the '886 Patent is invalid for failure to meet the requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112;

d. Award Plaintiff a permanent injunction enjoining Defendant from asserting the '886 Patent against Plaintiff's Products;

e. Award Plaintiff its reasonable attorney fees if this Court finds that this case is an "exceptional case" under 35 U.S.C. § 285; and

f. Any further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all issues that may be determined by a jury.

Dated: February 11, 2026

Respectfully Submitted,

*/s/ Jason D. Smith*
Jason D. Smith
Nevada Bar No. #9691
**Spencer Fane**
300 South Fourth Street, Suite 1600
Las Vegas, NV 89101
Phone: 702-408-3400 / Fax: 702-938-8648
jdsmith@spencerfane.com

Allen Justin Poplin (will comply with LR IA 11-2 within 14 days)
**AVEK IP, LLC**
7285 W. 132nd Street, Suite 340
Overland Park, KS 66213
Phone: (913) 303-384
jpoplin@avekip.com
*Attorneys for Plaintiff*

Case No.

COMPLAINT
-13-